**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| SIRDONIA LASHAY MANIGAULT-JOHNSON, AND HER CHILD R.R., ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC, a Delaware limited liability company; ALPHABET, INC., a Delaware corporation; YOUTUBE, LLC, a limited liability company;<br>Defendants. | CASE NO.:  2:18-cv-1032-BHH<br><br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This is an action brought by and on behalf of parents of children who, while viewing online videos via smart phone apps and websites, have had their personally identifying information exfiltrated by the Defendants and their partners, for future commercial exploitation, in direct violation of the federal Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501–6506. Plaintiffs bring claims under federal and state laws to obtain an injunction to cease these practices, sequester illegally obtained information, and for damages.

## PARTIES

2. Plaintiffs are a parent and her child who used an online video service via websites, downloadable applications, or online services operated by Defendants.

3. Plaintiff Sirdonia Lashay Manigault-Johnson and her child, R.R., reside in Dorchester County, South Carolina. Ms. Manigault-Johnson brings this action on behalf of herself, R.R.., and all others similarly situated. R.R. was under the age of 13 while viewing content provided by Defendants' website or app.

1

4. Defendant YouTube, LLC is a for profit limited liability corporation, wholly owned by Google Inc., and organized under the laws of the State of Delaware. YouTube's principal place of business is Mountain View, California and it regularly conducts business throughout California, including Santa Clara County, California. Defendant YouTube, LLC operates the largest and most popular internet video viewer site, platform, and service in California, the United States, and the world, and holds itself out as one of the most important and largest public forums for the expression of ideas and exchange of speech available to the public. Plaintiffs are informed and believes that at all relevant times, Defendant YouTube, LLC acts as an agent of Defendant Google Inc. and uses, relies on, and participates with Defendant Google Inc. in restricting speech on the YouTube site, platform, or service.

5. Defendant Google Inc. is a for profit, public corporation incorporated under the laws of the State of Delaware, with its principal place of business in Mountain View, California and regularly conducts business throughout California, including Santa Clara County. Plaintiffs are informed and believe, that at all relevant times, Defendant Google Inc. acts as an agent of Defendant YouTube, LLC, and controls or participates in controlling and restricting speech on the YouTube service or platform.

6. Alphabet Inc. is a Delaware corporation is an American multinational conglomerate headquartered in Mountain View, California. It was created through a corporate restructuring of Google on October 2, 2015, and became the parent company of Google and several former Google subsidiaries.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of

$5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

8. This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, have substantial aggregate contacts with the United States, including in this District, engaged and are engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States.

9. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because the state law claims form part of the same case or controversy under Article III of the United States Constitution.

10. In accordance with 28 U.S.C. § 1391(c)(2), venue is proper in this District because the Defendants are subject to personal jurisdiction in this District as set forth more fully herein.

11. Jurisdiction and Venue are proper in this jurisdiction specifically because Defendants own and operate a data center in Berkeley County, South Carolina, and employ South Carolina citizens.



12. Defendants' conduct giving rise to this action occurred in the State of California and therefore, pursuant to the doctrine of *lex loci delecti*, the laws of the State of California govern this action.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

13. Recognizing the vulnerability of children in the internet age, in 1999 Congress enacted the Children's Online Privacy Protection Act (COPPA). See 15 U.S.C. §§ 6501–6506. COPPA's express goal is to protect children's privacy while they are connected to the internet.

14. Under COPPA, developers of child-focused apps, and any third-parties working with these app developers, cannot lawfully obtain the personal information of children under 13 years of age without first obtaining verifiable consent from their parents.

15. COPPA applies to any operator of a commercial website or online service (including an app) that: (a) collects, uses, and/or discloses personal information from children, or (b) on whose behalf such information is collected or maintained. Under COPPA, personal information is "collected or maintained on behalf of an operator when . . . [t]he operator benefits by allowing another person to collect personal information directly from users of" an online service. 16 C.F.R. § 312.2. In addition, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children.

16. Under COPPA, "personal information" includes more commonly understood information like names, email addresses, and social security numbers, but it also includes "persistent identifier[s] that can be used to recognize a user over time and across different Web sites or online services." 16 C.F.R. § 312.2. COPPA's broad definition of "personal information" is as follows:

> individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and

4

name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to "a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier"); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier.

17. The FTC regards "persistent identifiers" as "personally identifiable" information that can be reasonably linked to a particular child. The FTC amended COPPA's definition of "personal information" to clarify the inclusion of persistent identifiers.

18. In order to lawfully collect, use, or disclose personal information, COPPA requires that an operator meet specific requirements, including *each* of the following:

   i. Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;

   ii. Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

   iii. Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

19. Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child. . . [r]eceives notice of the operator's personal information collection, use, and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personal information." 16 C.F.R. § 312.2.

5

20. The FTC recently clarified acceptable methods for obtaining verifiable parental consent, which include: (i) providing a consent form for parents to sign and return; (ii) requiring the use of a credit card/online payment that provides notification of each transaction; (iii) connecting to trained personnel via video conference; (iv) calling a staffed toll-free number; (v) emailing the parent soliciting a response email plus requesting follow-up information from the parent; (vi) asking knowledge-based questions; or (vii) verifying a photo ID from the parent compared to a second photo using facial recognition technology. See https://www.ftc.gov/tips- advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance (last visited August 3, 2017).

21. Google is a multinational technology company that specializes in online advertising technologies and data services.

22. YouTube is a subsidiary of Google, whose parent company is Alphabet, Inc., a multinational conglomerate with diverse holdings in multiple market categories.

23. YouTube is a video-sharing and digital advertising website that encourages its users to upload, view, and share videos.

24. With over 1.5 billion unique monthly visitors worldwide, YouTube is one of the most visited websites in the world.

25. YouTube earns 45% of all YouTube ad revenues generated from advertisements on its website.

26. Children have become a lucrative audience for advertising via YouTube.

27. The kids' online advertising market is set to grow to $1.2 billion by 2019 and YouTube accounts for over 30% of kids' online time, creating a major opportunity for advertisers in the sector.

28. More than half of YouTube views come from mobile devices.

29. As of 2017, 98% of households have a mobile device and 69% of children use mobile devices if they are available in the household.

30. YouTube is such a popular venue for watching children's programming that it has been called the new children's TV.

31. YouTube's Terms of Service state that it is not intended for children's use:

> **12. Ability to Accept Terms of Service**
> You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in these Terms of Service, and to abide by and comply with these Terms of Service. In any case, you affirm that you are over the age of 13, as the Service is not intended for children under 13. If you are under 13 years of age, then please do not use the Service. There are lots of other great web sites for you. Talk to your parents about what sites are appropriate for you.

32. Many children watch YouTube on mobile devices, decreasing the likelihood that they are co-viewing with their parents.

33. Accordingly, a significant portion of YouTube's channels are directed to children.

34. YouTube is integrated with Google's complex of advertising technologies and services, including AdWords, DoubleClick, and Google Preferred.

35. AdWords is the Web's most popular advertising service. It serves more than four million advertisers, and enables ads to target children on YouTube. AdWords offers a variety of targeting methods, including via YouTube, so that advertisers can reach their ideal audience based on who they are, what they're interested in, or what content they're viewing.

36. Through Adwords, advertisers can target children by using keywords such as "kid," "child," "toddler," "baby" or "toy." AdWords will even suggest keywords such as "barbie doll dream house."

37. DoubleClick is an advertising serving and tracking company that uses web cookies to track browsing behavior online by their IP address to deliver targeted ads. Since purchasing DoubleClick

7

in 2007, Google has significantly expanded its capabilities. DoubleClick as "connects the right people, in the right moment, to make digital advertising."

38. YouTube targeted ads can be delivered via the sophisticated DoubleClick Ad Exchange, using data driven programmatic marketing applications.

39. Google and YouTube offer advertisers the opportunity to precisely target individuals across different platforms with personalized messages.

40. Google launched Google Preferred in October 2014. Google Preferred is a "premium service that allows advertisers to pair up their ads with top-performing videos within a certain top-level theme, such as music, news or automotive."

41. Google Preferred is similar to buying advertising on prime- time television, Google Preferred provides major advertisers guaranteed access to the top 5% of content on YouTube.

42. Google Preferred offers thirteen program "lineups," including Beauty & Fashion, Sports, Food & Recipes, and what it used to call, Family and Children's Interests. Even though that lineup is now called the "Parenting & Family" lineup, it is comprised almost exclusively of channels intended for young children.

43. YouTube launched the YouTube Kids (YTK) app in 2015

44. The YTK app is designed so that all videos available on the app are also on the main YouTube platform, but not all videos on YouTube are available on the YTK app. The videos shown on the YTK app are selected from the videos on YouTube using an algorithm, supplemented by human review.

45. However, children's content is available on both YouTube and YTK.

46. Despite the availability of the YTK app, more children use YouTube than the YTK app.

47. YouTube has many child-directed channels aside from those in the Parenting & Family lineup.

48. Large portions of YouTube directed are to children and Google has actual knowledge that YouTube is collecting personal information from children.

49. YouTube content creators directly communicate the child-directed nature of their content in the "About" section of their channels.

50. YouTube representatives have recognized and encouraged the existence of child-directed content on YouTube.

51. Google defines "personal information" as "individually identifiable information about an individual collected online."

52. This personally identifiable information (PII) can also be a telephone number, geolocation information sufficient to identify street name and name of a city or town, persistent identifiers that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifiers include, but are not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or a unique device identifier, information concerning the child or the parents of that child that the operator collects online from the child and combines with another identifier described in the definition.

53. Google's Privacy Policy states that it collects this PII information from users including "unique device identifiers, and mobile network information including phone number." The privacy policy further discloses that "we may collect and process information about your actual location" using various technologies to determine location, including IP address, GPS, and other sensors.

54. The PII allows a user to be traced over time and across different websites or online services.

55. Likewise, YouTube's privacy policy states it tracks users over time and across different websites to create profiles and to target ads based on that information. The privacy policy states that it collects information from its users to show them "more relevant search results and ads."

56. YouTube collects personal information from all viewers (e.g., IP addresses, device information, geolocation and persistent identifiers) regardless of whether they create an account, and without first giving notice and obtaining parental consent.

57. YouTube does not have a separate privacy policy for children. Nor does the privacy policy even mention children.

58. YouTube's home page provides a link to its privacy policy in light gray, hard-to-read type, at the bottom left hand of the screen making it inconspicuous. Clicking this link takes the user to the Google Privacy Policy. There is no separate link for a children's privacy policy, nor does the Google Privacy Policy contain any reference to a children's privacy policy. Indeed, the Privacy Policy does not use the word "child" or "children" at all.

59. YouTube makes no effort to ensure that parents receive direct notice of its data collection practices.

60. Defendants make no effort to seek parental consent for data collection.

61. Defendants collects PII from children under the age of 13, and use it to target advertisements, without giving notice or obtaining advanced, verifiable parental consent.

### NAMED PLAINTIFF SPECIFIC ALLEGATIONS

62. Plaintiff R.R, created an account on Defendants' website to view content on R.R.'s mobile device on an ongoing and continuous basis; RR also downloaded Defendants' app to view the same.

63. On information and belief, during the time R.R. viewed videos on Defendants' websites or through their apps, one or more of the Defendants collected, disclosed, or used personal information and persistent identifiers of R.R. Defendants did not collect R.R.'s personal information to provide support for the internal operations of Defendants, but instead to profile R.R. for commercial gain.

64. The Defendants never asked Ms. Manigault-Johnson for her verifiable parental consent – in any form or at any time – to collect, disclose, or use her child's personal information, including persistent identifiers, as required by COPPA.

65. The Defendants never provided direct notice – as required by COPPA – to Ms. Manigault-Johnson regarding Defendants' practices with regard to collecting, using, and disclosing her child's personal information, or regarding the rights of Ms. Manigault-Johnson or her child under COPPA, either when Ms. Manigault-Johnson initially downloaded the app, or afterwards, on the app's home or landing screen.

66. Defendants' tracking and collection of R.R.'s personal information without her verifiable parental consent is highly offensive to Ms. Manigault-Johnson and constitutes an invasion of her child's privacy and of Ms. Manigault-Johnson's right to protect her child from this invasion.

## CLASS ALLEGATIONS

67. Plaintiffs seek class certification of the Class set forth herein pursuant to Federal Rule of Civil Procedure 23.

68. Plaintiffs seek class certification of claims for the common law privacy cause of action Intrusion upon Seclusion and on behalf of a multi-state class defined as follows:

> **Multistate Class:** all persons residing in the United States who are younger than the age of 13, or were younger than the age of 13 when they viewed content on or through Defendants' websites or apps, and their parents and/or legal guardians,

11

        from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

69. Plaintiffs seek class certification of a claim for violation of the State of California Constitution Right to Privacy on behalf of a subclass of the Multi-state Class, with a subclass defined as follows:

> **The California Subclass of the Multi-state Class**: all persons residing in the State of California who are younger than the age of 13, or were younger than the age of 13 when they viewed content on or through Defendants' websites or apps, and their parents and/or legal guardians, from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

70. Plaintiffs reserve the right to modify or refine the Class or Subclass definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

71. Excluded from the Classes and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

72. **Ascertainability.** The proposed Class and Subclass are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class and Subclass. Further, the Class and Subclass can be readily identified through records maintained by Defendants.

73. **Numerosity (Rule 23(a)(1)).** The Class and Subclass are so numerous that joinder of individual members herein is impracticable. The exact number of Class and Subclass members, as herein identified and described, is not known, but download figures indicate that YouTube videos have been viewed hundreds of millions of times.

74. **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

   i. Whether Defendants engaged in the activities referenced in paragraphs 13-61 via the video app or website;

   ii. Whether Defendants provided disclosure of all the activities referenced in paragraphs 13-61 on a website as required by COPPA;

   iii. Whether Defendants directly notified parents of any of the activities referenced in paragraphs 13-61;

   iv. Whether Defendants sought verifiable parental consent prior to engaging in any of the activities referenced in paragraphs 13-61;

   v. Whether Defendants provided a process or mechanism for parents to provide verifiable parental consent prior to engaging in any of the activities referenced in paragraphs 13-61;

   vi. Whether Defendants received verifiable parental consent prior to engaging in any of the activities referenced in paragraphs 13-61;

   vii. Whether Defendants' acts and practices complained of herein violate COPPA;

   viii. Whether Defendants' acts and practices complained of herein amount to acts of invasion of privacy;

   ix. Whether Defendants' conduct violated Subclass members' Right to Privacy;

   x. Whether Defendants were unjustly enriched by trafficking children's personal information through the illegal aggregation of the same;

      xi. Whether Defendants were negligent, grossly negligent, or negligent *per se* by aggregating and selling children's personal information;

      xii. Whether members of the Class and Subclass have sustained damages, and, if so, in what amount; and,

      xiii. What is the appropriate injunctive relief to ensure Defendants no longer illegally collect children's personal information to track them over time and across different websites or online services.

75. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of members of the proposed Class and Subclass because, among other things, Plaintiffs and members of the Class and Subclass sustained similar injuries as a result of Defendants' uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendants.

76. **Adequacy (Rule 23(a)(4)).** Plaintiffs will fairly and adequately protect the interests of the proposed Class and Subclass. Plaintiffs' interests do not conflict with the interests of the Class and Subclass members and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Classes.

77. **Predominance & Superiority (Rule 23(b)(3)).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and

provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

78. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed Class and Subclass, making final declaratory or injunctive relief appropriate with respect to the proposed Class and Subclass as a whole.

79. **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

**FOR A FIRST CAUSE OF ACTION**
**Intrusion Upon Seclusion**
**(Brought on Behalf of the Multi-state Class)**

80. Plaintiffs repeat and reallege all preceding paragraphs contained herein.

81. Plaintiffs and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiffs' and Class members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants.

82. The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Class members' behavior through their access to Plaintiffs' and Class members' private mobile devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

83. Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the video apps or services to surreptitiously

obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the monitoring technologies and activities described herein.

84. These intrusions are highly offensive to a reasonable person. This is evidenced by, inter alia, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Class members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and Class members—in one of the most private spaces available to an individual in modern life—and to allow third-parties to do the same.

85. Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

86. Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

87. As a result of Defendants' actions, Plaintiffs and Class members seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of COPPA, and destruction of all personal data obtained in violation of COPPA.

88. As a result of Defendants' actions, Plaintiffs and Class members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendants' actions – which were malicious, oppressive, willful – were

calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## FOR A SECOND CAUSE OF ACTION
### California Constitutional Right to Privacy
### (Brought on Behalf of the California Subclass of the Multistate Class)

89. Plaintiffs repeat and reallege all preceding paragraphs contained herein.

90. Plaintiffs and Subclass members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiffs' and Subclass members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by the Content viewing software.

91. The reasonableness of such expectations of privacy is supported by Developer Defendants' unique position to monitor Plaintiffs' and Subclass members' behavior through their access to Plaintiffs' and Subclass members' private mobile devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

92. Defendants intentionally intruded on and into Plaintiffs' and Subclass members' solitude, seclusion, right of privacy, or private affairs by intentionally designing the Content viewing software to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Subclass members' activities through the monitoring technologies and activities described herein.

93. These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential information about children, constituting an egregious breach of social norms. This is evidenced by, inter alia, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying

the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Subclass members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and Subclass members—in one of the most private spaces available to an individual in modern life—and to allow third-parties to do the same.

94. Plaintiffs and Subclass members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

95. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Subclass members.

96. As a result of Defendants' actions, Plaintiffs and Subclass members seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of COPPA, and destruction of all personal data obtained in violation of COPPA.

97. As a result of Defendants' actions, Plaintiffs and Subclass members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendants' actions – which were malicious, oppressive, willful – were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated respectfully requests this Court:

a) Certify this case as a class action, appoint Plaintiff Manigault-Johnson as Class and Subclass representative, and appoint Plaintiffs' counsel to represent the Class and Subclass;

b) Find that Defendants' actions, as described herein, constitute: (i) breaches of the common law claim of intrusion upon seclusion in the United States; and (ii) a violation of the right to privacy under California Constitution, Article I, Section 1;

c) Enter a declaratory judgment that Defendants' actions of collecting, using, or disclosing personal information of child users without first obtaining verifiable parental consent violates COPPA;

d) Enter an order permanently enjoining Defendants from collecting, using, or disclosing personal information of child users without first obtaining verifiable parental consent;

e) Award Plaintiffs and Class and Subclass members appropriate relief, including actual and statutory damages and punitive damages, in an amount to be determined at trial;

f) Award equitable, injunctive, and declaratory relief as may be appropriate;

g) Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

h) Grant such other legal and equitable relief as the Court may deep appropriate.

*SIGNATURE BLOCK ON FOLLOWING PAGE*

        Respectfully Submitted,

        **ANASTOPOULO LAW FIRM, LLC**

        *s/ Akim Anastopoulo*
        Akim A. Anastopoulo, Esq.
        Fed. ID Number: 3546
        info@akimlawfirm.com
        Eric M. Poulin, Esq.
        Fed ID Number: 11251
        eric@akimlawfirm.com
        Roy T. Willey, IV, Esq.
        Fed ID Number: 11664
        roy@akimlawfirm.com
        Matthew Nall, Esq.
        Fed ID Number: 12326
        matt@akimlawfirm.com

        Anastopoulo Law Firm, LLC
        32 Ann Street St.
        Charleston, SC 29403
        (843) 614-8888

        **ATTORNEYS FOR PLAINTIFFS**

Charleston, South Carolina
April 16, 2018